**Charles B. RILEY, Plaintiff-Appellant-Cross Appellee,**

v.

**The BENDIX CORPORATION, Defendant-Appellee-Cross Appellant.**

**No. 71–3112.**

United States Court of Appeals, Fifth Circuit.

July 14, 1972.

Rehearing and Rehearing En Banc Denied Sept. 12, 1972.

William E. Kreuter, Frank McMillan, of Lovett, Kreuter & Holmes, Orlando, Fla., for appellant.

Julia P. Cooper, Chief, Appellate Section, E.E.O.C., G. Maxine Bethel, John de J. Pemberton, Jr., Acting Gen. Counsel, Washington, D. C., amicus curiae.

Stuart A. Smith, Washington, D. C., for National Jewish Commission on Law and Public Affairs, amicus curiae; Howard I. Rhine, New York City, Nathan Lewin, Washington, D. C., Sidney Kwestel, New York City, National Jewish Commission on Law and Public Affairs, of counsel.

Norman F. Burke, Orlando, Fla., for defendant-appellee, cross-appellant; Van Den Berg, Gay, Burke & Dyer, Orlando, Fla., of counsel.

Before TUTTLE, MORGAN and RONEY, Circuit Judges.

TUTTLE, Circuit Judge:

The principal issue raised in this case is the meaning of the prohibition in Section 703(a) (1) of the Civil Rights Act of 1964, 42 U.S.C.A. 2000e–2(a) (1), against discrimination "because of religion."

The issue that is drawn may be posed by stating the positions taken by the respective parties. The employer, The Bendix Corporation, contends that when it employs a salaried employee to work a scheduled number of hours per week, and company policy provides that such employee be occasionally shifted to a different shift, which impinges upon a time of the week, in this instance after sundown on Fridays, during which the religious principles of the employee forbid him to work, his refusal to work in accord with such religious principles but contrary to the rules of the employer, provide an ample basis for the termination of his employment. On the other side, the employee contends that where the general rules applicable to all employees may require such working requirements as outlined above, the employee is entitled to pursue his religious requirements if this may be accomplished by virtue of the employer's making "reasonable accommodations to the religious needs of employees and prospective employees where such accommodations may be made without undue hardship on the conduct of the employer's business." Further, the employee contends that the employer has the burden of proving that an undue hardship renders the required accommodations to the religious needs of the employee unreasonable.

The facts necessary to an understanding of this issue may be briefly stated: Riley was employed in January, 1967, by The Bendix Corporation as a salaried foreman. He was initially assigned to a day shift, which terminated at approximately 4:00 P.M. daily. He had been an active member of the Seventh Day Adventist faith for some fifteen years prior to this employment. There is no dispute as to the sincerity with which he held to the tenets of his church, which included a provision that no work for compensation be carried on between sundown Friday and sundown Saturday. After working some six months, he was notified that he would have to go on a night shift, which commenced at 3:30 P.M. and ran until 12:00 midnight. It is not exactly clear when he first protested his inability to work after sundown on Fridays. However, it is undisputed that he did not work at least three Friday nights between July 27th and the date of his termination on August 18, 1967. It is clear that on at least three occasions during that time he expressly notified his supervisor that he could not,

on account of his religious beliefs, work on Friday evenings.

Although witnesses for The Bendix Corporation testified that his work was important, it was also conceded by these witnesses that no "accommodation" of any kind was made to permit Riley to be absent on Friday evenings. The company merely took the position that since the requirements of employment operated uniformly, it was under no obligations to make a concession to Mr. Riley to permit him to be absent from work on Friday evenings because of his religious convictions. Nor was there any effort made to re-transfer him to a day shift, or to arrange for another person to substitute for him during these hours. In fact it appears that no substitute was necessary to perform the duties which Riley would ordinarily have performed during the part of the Friday night shift which he missed on these occasions. The record is silent as to whether efforts were made even to cause Riley to compensate the company by a deduction of a part of his salary by reason of the hours missed. It was only testified to that his salary was not docked for the four Friday nights which he failed to work. The technical reason for his discharge was "insubordination" —that is for failing to work as ordered.

Relying principally on Griggs v. Duke Power Company, 401 U.S. 424, 430, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971), the appellant criticizes the findings of the trial court, 330 F.Supp. 583, to the effect that since Bendix's rules and working conditions applied uniformly with respect to all of its employees, and never at any time discriminate against any person because of race, creed or color, the fact that it did put an end to Riley's employment because his religious convictions prevented his carrying out a uniformly applied rule of the company, there was no violation of this statute. Appellant contends that it is not a matter of intent or apparent neutral action that controls, but that "under the [Civil Rights] Act, practices, procedures, or tests, neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices."

"The Act proscribes not only overt discrimination, but also practices that are fair in form, but discriminatory in operation. The touchstone is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited." 401 U.S. 424, 431, 91 S.Ct. 849, 853.

We need not consider this case by a bare construction of the language of the statute, in undertaking to decide whether what has happened to Mr. Riley falls within the prohibition of discrimination on account of "religion." This is true that because at the time of the actions here complained of there was an existing Equal Employment Opportunity Commission guideline 29 CFR, Sec. 1605.1, which provided as follows:

"(b) The Commission believes that the duty not to discriminate on religious grounds, required by Section 703(a) (1) of the Civil Rights Act of 1964, includes an obligation on the part of an employer to make reasonable accommodations to the religious needs of employees and prospective employees where such accommodations can be made without undue hardship on the conduct of the employer's business. Such undue hardship, for example, may exist where the employee's needed work cannot be performed by another employee of substantial similar qualifications during the period of absence of the sabbath observer."

And sub-paragraph (c) provides:

"Because of the particularly sensitive nature of discharging or refusing to hire an employee or applicant on account of his religious belief, the employer has the burden of proving that an undue hardship renders the required accommodations to the religious needs of the employee unreasonable."

This guideline was issued by authority of the Act itself. 2000e–12 provides as follows:

"Section 713(a). The Commission shall have authority from time to time to issue, amend, or rescind the suitable procedural regulations to carry out the provisions of this title. Regulations issued under this section shall be in conformity with the standards and limitations of the Administrative Procedure Act."

The appellee attacks the validity of the guidelines here invoked on behalf of Riley, but it is interesting to note that the Supreme Court, in Griggs, supra, spoke with approval of such guidelines, as follows:

The Equal Employment Opportunity Commission, having enforcement responsibility, has issued guidelines for interpreting § 703(h) to permit only the use of job-related tests (footnote omitted). The administrative interpretation of the Act by the enforcing agency is entitled to great deference. See, e. g., United States v. City of Chicago, 400 U.S. 8 [91 S.Ct. 18, 27 L.Ed.2d 9] (1970); Udall v. Tallman, 380 U.S. 1 [85 S.Ct. 792, 13 L.Ed.2d 616] (1965); Power Reactor Development Company v. Electricians, 367 U. S. 396 [81 S.Ct. 1529, 6 L.Ed.2d 924] (1961). Since the Act and its legislative history support the Commission's construction, this affords good reason to treat the guidelines as expressing the will of Congress." 401 U.S. 424, 433, 91 S.Ct. 849, 854.

If there were any doubt as to the effect to be given to these guidelines because of a lingering doubt as to whether they truly expressed the will of Congress, a significant event has since transpired which lays to rest any such doubt. In an amendment to the Civil Rights Act of 1964, approved by the Senate of the United States on March 6, 1972, and by the House of Representatives on March 8, 1972, the following provision was added to Section 701:

"(7) After subsection (i) insert the following subsection (j):

(j) The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

The total legislative history of this amendment appears at 118 Congressional Record, §§ 227–253. There it appears that Senator Randolph, of West Virginia, who sponsored the amendment, explained that it was designed to resolve the issue left open by the equal division of the Supreme Court of the United States in Dewey v. Reynolds Metals Company, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971). At 118 Congressional Record, § 228, Senator Randolph said:

"I think in the Civil Rights Act we thus intended to protect the same rights in private employment as the Constitution protects in Federal, State or local governments. Unfortunately, the courts have, in a sense, come down on both sides of the issue. The Supreme Court of the United States, in a case involving the observance of the Sabbath and job discrimination, divided evenly on this question.

This amendment is intended, in good purpose, to resolve by legislation —and in a way I think was originally intended by the Civil Rights Act— that which the courts apparently have not resolved. I think it is needed not only because court decisions have clouded the matter with some uncertainty; I think this is an appropriate time for the Senate, and hopefully the Congress of the United States, to go back, as it were, to what the Founding Fathers intended. The complexity of our industrial life, the transition of our whole area of employment, of course are matters that were not al-

ways understood by those who led our Nation in earlier days."

It is significant that this measure was passed by a unanimous vote in the Senate.

The legislative history shows similar approval by the House of Representatives after the Chairman of the House Committee made the following explanation:

"*Section 701(j)*—This subsection, which is new, defines 'religion' to include all aspects of religious observance, practice and belief, so as to require employers to make reasonable accommodations for employees whose 'religion' may include observances, practices, and beliefs such as sabbath observance, which differ from the employer's or potential employer's requirements regarding standards, schedules, or other business-related employment conditions.

Failure to make such accommodation would be unlawful unless an employer can demonstrate that he cannot reasonably accommodate such beliefs, practices, or observances without undue hardship on the conduct of his business.

The purpose of this subsection is to provide the statutory basis for EEOC to formulate guidelines on discrimination because of religion such as those challenged in Dewey v. Reynolds Metals Company, 429 F.2d 325 [324] (6th Cir. 1970). Affirmed by an equally divided court, 402 U.S. 689 [91 S.Ct. 2186, 29 L.Ed.2d 267] (1971)." 118 Congressional Record, pp. 1861–1862.

Appellee relies strongly on the case of Dewey v. Reynolds Metals Company, 429 F.2d 324 (6 Cir., 1970). In the Dewey case the trial court had held that the discharge of an employee because of his refusal to work on Sunday amounted to discrimination on religious grounds. In so holding, the trial court there applied the guidelines from which we have quoted above, which became effective July 10, 1967, whereas the discharge of the employee Dewey had occurred some six months prior to the issuance of such guidelines, and at a time when the guidelines of 1966 were in effect. The Court of Appeals for the Sixth Circuit, in reversing the judgment of the trial court, pointed specifically to the fact that the discharge of Dewey was strictly in accordance with the provisions of the 1966 guidelines. , This, of course, presents a marked distinction from the case before us, in that Riley was discharged after the effective date of the new guidelines. We, therefore, have no guidance from the Court of Appeals for the Sixth Circuit on the real issue which is here involved, except that the court there seemed to stress the importance of the guidelines in existence at the time of the alleged discriminatory act. This, of course, supports the position of Riley in the case before us. The Supreme Court affirmed the Dewey case by an equally divided court, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971). Of course, this added nothing to the jurisprudence.

We are satisfied that the guidelines in effect at the time of Riley's discharge were valid, as being a proper interpretation of the statute, and as validated by the subsequent legislative recognition of that fact. See Lee v. Southern Home Sites Corporation, 5 Cir., 1971, 444 F.2d 143, where this court said:

"Where the older statutes are silent, and where the responsibility for fashioning an effective remedy must be met by the courts, they should look to the policies embodied in the remedial provisions *of the more recent statutes* as a reference in shaping remedies to the needs of the older statutes."

Moreover, it is to be noted that although supplementary briefs filed by the E.E.O.C. and amicus counsel expressly called attention to the subsequent amendment which we have just referred to, no response has been offered by the appellees to the contention that such subsequent amendment fully validates the 1967 E.E.O.C. regulations.

We conclude that since it is clear on the record that the employer here did not demonstrate that he was unable to reasonably accommodate to Riley's religious observance or practice without undue hardship on the conduct of the employer's business, Riley's discharge was an unlawful discriminatory employment practice under Title .7 of the 1964 Civil Rights Act.

This being the only issue, by stipulation of the parties, that is to be decided by this court, the judgment is, therefore, reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules .of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.