**McCann L. REID, Plaintiff-Appellant,**

v.

**MEMPHIS PUBLISHING COMPANY, Defendant-Appellee.**

**No. 72-1088.**

United States Court of Appeals, Sixth Circuit.

Oct. 18, 1972.

John E. Bishop, New York City, for appellant; David E. Caywood, Memphis, Tenn., Jack Greenberg, William L. Robinson, John E. Bishop, New York City, Louis R. Lucas, Ratner, Sugarmon, Lucas & Willis, Memphis, Tenn., on briefs.

Armistead F. Clay, Memphis, Tenn., for appellee; Pittman, Clay, Morgan, Cole & Gilliland, Memphis, Tenn., on briefs.

Before EDWARDS and CELEBREZZE, Circuit Judges, and THOMAS,* District Judge.

EDWARDS, Circuit Judge.

This appeal presents still another difficult problem concerning the prohibition of religious discrimination contained in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1970). Appellant, a Negro newspaper man in Memphis, sought employment as a copyreader on the Press-Scimitar, an afternoon newspaper in Memphis published by defendant-appellee. He filed the instant complaint when he was refused the job. The controlling paragraphs of the complaint appear to be:

"The plaintiff who at the time of this application and who remains the editor of the Tri-State Defender, applied for a copyreader position with the defendant company. The defendant company denied the plaintiff employment on the basis of his race and on the basis of his religion.

"Plaintiff, a Seventh Day Adventist, does not, because of the tenets of his religion, work on Saturdays although he remains available to work on any other day of the week. The defendant Company declined to employ him, alleging as one ground for its failure to do so their unwillingness to employ an individual who, because of his religion, would not work on a Saturday."

The case was tried before the United States District Court for the Western District of Tennessee, Western Division. The District Judge entered these findings of fact:

"In September of 1967, plaintiff indicated to the Press-Scimitar that he was interested in a job as a copyreader, a job that is different from that of reporter but one still within the editorial department. It is a specialized job which requires a certain amount of experience and training. Plaintiff again took a test, this time a practical test under the supervision of the news editor under whom the copyreaders work. On this test, plaintiff demonstrated to the satisfaction of the news editor his ability to handle the job of copyreader.

"At this time consideration was being given to transferring one of the copyreaders to another department and in this event a job as copyreader would be open. The news editor recommended to the managing editor that plaintiff be given the job. The managing editor added his approval and passed along the application to

* Honorable William K. Thomas, United States District Judge for the Northern District of Ohio, sitting by designation.

the editor for final action. In an interview which followed between the editor and plaintiff, the salary terms were discussed and agreed upon and the details of plaintiff's prospective employment by defendant were being discussed when the editor learned that plaintiff would not work on Saturdays because of his religious beliefs, he being a member of the Seventh Day Adventist faith. The fact that plaintiff would not work on Saturday was first made known to the defendant during this interview with the editor.

"There is nothing in the proof to indicate that plaintiff's refusal to work on Saturday was anything other than a conscientious and previously formed religious conviction.

"It was the policy of this newspaper, the Memphis Press-Scimitar, to require all employees to be available for work, if necessary, seven days a week, and certainly to be available for Saturday assignments. And it was further the policy of this newspaper in the assignment of copyreaders to assign new employees to Saturday work; that is, to give preference of other weekdays to employees with more seniority, subject to the specialities possessed by the copyreaders.

"Copyreaders usually have special abilities in addition to their general abilities, and normal operations require a crew of copyreaders who possess expertise in specific areas, such as telegraphic work, Mid-South specialities, and other categories, in addition to the ability to perform the normal routine of copyreading. For this reason, copyreaders are not readily interchangeable with other copyreaders, and a minimum crew made up of a certain number of copyreaders who possess different specialities is required for every day's operation, even for the lighter work day on Saturday. The Press-Scimitar is not published on Sunday, but some reporters do work on Sundays covering various assignments.

"The Press-Scimitar has never had a policy whereby any person, white or black, has been hired with the understanding that he would be relieved from working on any particular day. While the record contains some proof to the effect that the Commercial Appeal did have personnel who did not work on certain days for religious reasons, nevertheless these two newspapers are different organizations within the corporate entity named herein as the defendant, and so plaintiff's claim which is based upon his failure to be employed by the Press-Scimitar must be tested by the separate policy of the Press-Scimitar.

"The court finds as a fact that at the time the plaintiff applied for a copyreader position with the Memphis Press-Scimitar in 1967 both the editor and the managing editor were desirous of hiring black people, and that plaintiff was offered the job of copyreader, and, therefore, the defendant has not been guilty of a refusal to hire plaintiff because of racial discrimination."

The District Judge then entered the following conclusions of law:

"The Civil Rights Act of 1964 is an anti-discrimination act. It is not to be confused with some of the interpretations that have been imposed on school boards as, for example, where such boards have been said to have an affirmative duty to perform.

"In a case of this kind, the burden of proof is on the plaintiff to prove that he was not hired because of discrimination based upon race or religion. Discrimination must be proved by the plaintiff. Dewey v. Reynolds Metals Company (6th Cir. 1970), 429 F.2d 324, affirmed by a divided court, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed. 2d 267 (1971).

"There being an established policy on the part of the Memphis Press-Scimitar that all of its employees be available to work on Saturday, and *there being no duty on the part of an*

*employer to accommodate an employee's or potential employee's religious belief contrary to the employer's established and required work schedule,* the court concludes that religious discrimination has not been established by plaintiff's proof, and concludes, therefore, that the defendant has not been guilty of a violation of the Civil Rights Act of 1964 for a refusal to hire plaintiff because of discrimination based on religion. Dewey v. Reynolds Metals Company, *supra.*" (Emphasis added.)

The District Judge's findings of fact are supported by the record and certainly cannot be considered clearly erroneous. We believe, however, that the conclusion of law italicized above is not in accord with the Equal Employment Opportunity Commission's regulations applicable at the time in October of 1967 when Reid was refused the job as copyreader and is not consistent with the latest Supreme Court construction of the Equal Employment Opportunity Act.

We recognize that the District Judge relied upon this court's majority opinion in Dewey v. Reynolds Metals Co., 429 F. 2d 324 (6th Cir. 1970), aff'd by an equally divided court, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971). There were, however, three substantial distinctions between the facts dealt with in *Dewey* and those in the instant case.

1) In *Dewey* the employer had made an accommodation to Dewey's Faith Reformed Church beliefs. Dewey was allowed to secure a qualified replacement when he was assigned to work on Sundays if he had been willing to do so. The majority opinion held that this represented "a reasonable accommodation to the religious needs of its [Reynolds] employees". Dewey v. Reynolds Metals Co., *supra,* 429 F.2d at 331.

2) The E.E.O.C. regulation relied upon by the District Judge in *Dewey* was not in effect at the time of Dewey's discharge but, as we will see was in effect at the time appellant Reid was refused employment.

3) A major basis for the decision in *Dewey* was a final award of the grievance arbitrator under the labor-management contract against Dewey. It may have been the decisive factor in the Supreme Court's 4–4 affirmance. Of course, no arbitration factor is present here.

By citing these distinctions we do not overlook the fact that the Dewey majority in our court expressed doubts about the constitutional validity of the E.E.O. C. regulation (29 C.F.R. 1605.1 (1970)) which is applicable to the refusal to hire appellant Reid.

29 C.F.R. 1605, adopted July 10, 1967, provides:

## PART 1605—GUIDELINES ON DISCRIMINATION BECAUSE OF RELIGION

§ 1605.1   Observation of the Sabbath and other religious holidays.

(a) Several complaints filed with the Commission have raised the question whether it is discrimination on account of religion to discharge or refuse to hire employes who regularly observe Friday evening and Saturday, or some other day of the week, as the Sabbath or who observe certain special religious holidays during the year and, as a consequence, do not work on such days.

(b) The Commission believes that the duty not to discriminate on religious grounds, required by section 703(a)(1) of the Civil Rights Act of 1964, includes an obligation on the part of the employer to make reasonable accommodations to the religious needs of employees and prospective employees where such accommodations can be made without undue hardship on the conduct of the employer's business. Such undue hardship, for example, may exist where the employee's needed work cannot be performed by another employee of substantially similar qualifications during the period of absence of the Sabbath observer.

(c) Because of the particularly sensitive nature of discharging or refusing to hire an employee or applicant on account of his religious beliefs, the employer has the burden of proving that an undue hardship renders the required accommodations to the religious needs of the employee unreasonable.

(d) The Commission will review each case on an individual basis in an effort to seek an equitable application of these guidelines to the variety of situations which arise due to the varied religious practices of the American people.

(Sec. 713(b), 78 Stat. 265; 42 U.S.C. 2000–12 [§ 2000e–12(b)]) [32 F.R. 10298, July 13, 1967]

Whatever doubts there may have been about the constitutionality of this regulation or its consistency with the statute have been, we believe, laid to rest by a unanimous Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). While *Duke Power* dealt with racial discrimination and our current concern is with religious discrimination, the Equal Employment Statute treats them similarly. The prohibitions against both forms of discrimination (and the exceptions thereto) are usually contained in the same sentences in the statute. 42 U.S.C. § 2000e–2(a)(1), (a)(2), (b), (c)(1), (c)(2), (d), (h), (j) (1970).

Justice Burger's discussion of the "business necessity" test laid down in *Duke Power* clearly extended to other prohibited forms of discrimination than race:

What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification. Griggs v. Duke Power Co., *supra*, at 431, 91 S.Ct. 849.

Far from disparaging job qualifications as such, Congress has made such qualifications the ·controlling factor, so that race, religion, nationality, and sex become irrelevant. What Congress has commanded is that any tests used must measure the person for the job and not the person in the abstract.

Concerning the "business necessity" test Justice Burger held:

The Act proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation. The touchstone is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited. *Id.* at 431, 91 S.Ct. 849.

The Court of Appeals held that the Company had adopted the diploma and test requirements without any "intention to discriminate against Negro employees." 420 F.2d, at 1232. We do not suggest that either the District Court or the Court of Appeals erred in examining the employer's intent; but good intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as "built-in headwinds" for minority groups and are unrelated to measuring job capability.

The Company's lack of discriminatory intent is suggested by special efforts to help the undereducated employees through Company financing of two-thirds the cost of tuition for high school training. But Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation. More than that, Congress has placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question. Id. at 432, 91 S.Ct. 849.

■ This reasoning convinces us that 29 C.F.R. § 1605.1 (1972) was both effective and valid at the time of appellant Reid's application for the Memphis Press-Scimitar copyreader position.

There is an additional reason for this holding. On March 24, 1972, Congress amended Title VII in several respects.

One of those amendments incorporates the substance of EEOC Regulation 1605.1. This appears in the following definition of religion:

"(j) The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Act of March 24, 1972, Pub.L. No. 92–261, § 701(j), 86 Stat. 103. (42 U.S.C. § 2000e(j).

As shown in Riley v. Bendix Corp., 464 F.2d 1113 (5th Cir. 1972) 4 E.P.D. § 7902, legislative history of this amendment stresses that the regulation (29 C. F.R. § 1605.1) did express the prior intention of Congress. This subsequent congressional affirmation strengthens our conclusion about the validity of the regulation.

The question then is not whether the Press-Scimitar's rules were intentionally discriminatory as to religion, but rather whether the Press-Scimitar could make "reasonable accommodation" to the religious practices of appellant Reid "without undue hardship." The answer to these questions should, of course, be first given by the District Court and the case will be remanded for that purpose.

■ On remand (contrary to the conclusion reached by the District Court on the first hearing) we believe that evidence pertaining to the employment practices of the Memphis Commercial Appeal should be considered as relevant evidence on the question as to whether the Memphis Press-Scimitar could "reasonably accommodate" plaintiff's religious practice "without undue hardship."

We agree with the District Judge that the complaint in this case pertains by its own clear language only to denial of the copyreader job and that therefore the race discrimination practices of the Press-Scimitar before 1967 were not before the District Court and are not before us.

The judgment of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.

THOMAS, District Judge (concurring).

The record reveals that in September 1967, plaintiff, a Seventh Day Adventist, applied for a position as copyreader on the *Memphis Press-Scimitar*. It is an afternoon newspaper in Memphis published by defendant-appellee; and the appellee also publishes the morning *Commercial Appeal*.

Appellant, editor of the *Tri-State Defender*, a weekly newspaper, demonstrated in a day's trial under the eye of the news editor that he was qualified to perform the duties of a copyreader. The managing editor recommended his employment; and the editor offered him the position. While the salary terms and other conditions were being settled the plaintiff first made known to the editor that because of his religious tenets as a Seventh Day Adventist plaintiff could not and would not work on Saturday. The editor withdrew the offer. However, it was made clear to plaintiff that he could have the job if he agreed to be available for Saturday work.

The trial court found as a fact that

. . . The *Press-Scimitar* has never had a policy whereby any person, white or black, has been hired with the understanding that he would be relieved from working on any particular day.

The managing editor put this policy in context when he testified:

This [plaintiff's refusal to work on Saturday because he was a Seventh Day Adventist] was a little upsetting because we never hire anybody and promise them any particular day off because of the six day week, and the scheduling, and the emergencies we have we can just not promise anybody

any time they will be off a certain day.

Supported by evidence the court made this related finding: It was the policy of the newspaper to require "all employees to be available for work, if necessary, seven days a week, and certainly to be available for Saturday assignments." The court further found that new employees were assigned to Saturday work "to give preference of other week days to employees with more seniority, subject to the specialities possessed by the copyreaders." Cataloging the special abilities and expertise required of copyreaders on this newspaper the trial court found that:

Copyreaders are not readily interchangeable with other copyreaders, and a minimum crew made up of a certain number of copyreaders who possess different specialities is required for every day's operation, even for the lighter work day on Saturday.

The trial court, relying upon Dewey v. Reynolds Metals Co., 429 F.2d 324 (6th Cir. 1970), held that: "There . . . [was] no duty on the part of an employer to accommodate an employee's or potential employee's religious belief contrary to the employer's established and required work schedule," and therefore, plaintiff did not establish a Title VII violation based upon religious discrimination.

In September 1967, when appellant was refused employment as a copyreader because he refused to work on Saturday there was in effect (not so, in *Dewey, supra*) a regulation promulgated by the EEOC under the Equal Employment Opportunity Act. 29 C.F.R. § 1605.1(a)(b)(c)(d), *supra*.

It is likely that the trial court did not apply this regulation to the instant case because of footnote 1 in *Dewey, supra* 331 that doubts the authority of EEOC to adopt such a regulation. On March 24, 1972, Congress amended Title VII in several respects. One of those amendments incorporates the substance of EEOC Regulation 1605.1. This appears in the following definition of religion:

"(j) The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Act of March 24, 1972, Pub.L. No. 92–261, § 701(j) 86 Stat. 103. (42 U.S.C. § 2000e(j).)

As shown in Riley v. Bendix Corp., 464 F.2d 1113 (5 Cir. 1972), 4 E.P.D. ¶ 7902, legislative history of that amendment stresses that the regulation (29 C.F.R. § 1605.1) did express the will of Congress. This subsequent congressional affirmation clarifies any doubts about the validity of the regulation. Hence, it becomes mandatory that the regulation be applied to the instant case. A similar result was reached in Riley v. Bendix Corp., *supra*. I concur, therefore, with the court's opinion that the judgment of the trial court must be reversed and the case remanded with the trial court directed to determine whether the *Press-Scimitar* could make "reasonable accommodation" to the religious practices of appellant "without undue hardship on the conduct of the employer's business."

Since the case is being remanded for action consistent with the Court's opinion, I think it necessary to elaborate on some of the matters expressed in the Court's opinion. The trial court should apply the test of the regulation directly to the policy of the *Press-Scimitar* that requires all employees to be available for work on Saturday and refuses to guarantee a new or old employee a particular day off. In applying the test to this policy and requirement of the *Press-Scimitar* the trial court will be governed by Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), and its conclusion that in the Equal Employment Opportunity Act,

. . . Congress has placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question.

The record reveals the existence of a policy and requirement of not guaranteeing any employee a specific day off. To uphold such a policy and requirement the trial court must find that the employer has sustained his burden of demonstrating that such policy and practice is necessitated by the requirements of the employer's business and find further that such policy and practice is applied equally to all employees. "What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Griggs, supra*, 431, 91 S.Ct. 853.

While the trial court found "that there was . . . [no] hostility on the part of defendant because of plaintiff's chosen religion," such finding does not automatically insulate the employer's policy from further challenge. "The Act proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Griggs, supra*, 431, 91 S.Ct. 853.

This does not mean that all employment practices which happen to adversely affect an employee's or prospective employee's religious observance or practice are proscribed by Title VII. It does mean, and the amendment to Title VII makes it clear, that "unless an employer demonstrates he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business," then such practice is prohibited. If the employer shows that a reasonable accommodation cannot be made and the trial court so finds, then Title VII does not command that the *Memphis Press-Scimitar* abrogate its policy of not guaranteeing its employees a particular day off each week.

There is another dimension of the case that on remand must be considered. The trial court concluded:

> While the record contains some proof to the effect that the *Commercial Appeal* did have personnel who did not work on certain days for religious reasons, nevertheless these two newspapers are different organizations within the corporate entity named herein as a defendant, and so plaintiff's claim which is based upon his failure to be employed by the *Press-Scimitar* must be tested by the separate policy of the *Press-Scimitar*.

The record reveals that the *Press-Scimitar* and the *Commercial Appeal* maintain separate and independent editorial policies. However, both papers are owned by the defendant publishing company, both newspapers are published on the same presses, and both operate in the same building. In addition, the two newspapers follow the policy of not raiding each other's staff. Under these circumstances I believe that the trial court erred in finding that the plaintiff's claim "must be tested by the separate policy of the *Press-Scimitar*." In determining whether the *Press-Scimitar's* business policy of not guaranteeing a specific day off was necessitated by the requirements of its business the trial court should consider that in its answer,

> Defendant admits that it employs a . . . Seventh Day Adventist or a copyreader who works on schedules that do not include Saturdays and employs a . . . member of the Jewish faith who does not work on Saturdays . . . [because] the *Commercial Appeal* publishes a paper on Sunday and it has been able to arrange the schedules of said two employees in such a way that the fact that they will not work on Saturdays has not too seriously curtailed its operation.

In light of this admission and any other relevant evidence it should be deter-

mined whether the seven day publishing schedule of the *Commercial Appeal* distinguishes the *Appeal's* apparent ability to accommodate to the Saturday off of two of its employees due to their religious observance and practice.