**David ANDERSON, Plaintiff,**

v.

**GENERAL DYNAMICS CONVAIR AEROSPACE DIVISION, a corporation; and International Association of Machinists and Aerospace Workers, AFL-CIO, Silvergate District Lodge 50, an association, Defendants.**

**Civ. No. 75-0857-S.**

United States District Court,
S. D. California.

May 2, 1980.

David Watkins, Jenkins & Watkins, Dallas, Tex., for plaintiff.

Olins & Forester, San Diego, Cal., for IAM District Lodge 50.

Ward W. Waddell, Jr., San Diego, Cal., for General Dynamics, Convair Div.

EDWARD J. SCHWARTZ, Chief Judge.

Plaintiff, David Anderson, an employee of General Dynamics Convair Aerospace Division ("General Dynamics") brought this Title VII action against General Dynamics and the International Association of Machinists and Aerospace Workers, AFL-CIO, Silvergate District Lodge 50 ("Union"), claiming that he had been discharged in violation of the religious discrimination provisions of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e–2(a) and 2000e(j). He sought reinstatement of employment benefits, an injunction restraining the Union from discriminating against him, back pay and allowances, attorneys' fees, costs and interest.

Anderson was first employed by General Dynamics in 1956. In 1959 he became a member of the Seventh Day Adventist Church. A tenet of the church is that its members should not belong to or contribute to labor organizations. Prior to 1972, the collective bargaining agreement between General Dynamics and the Union did not require General Dynamics to employ only Union members. On April 3, 1972, however, a new agreement became effective which contained a provision requiring all employees to join the Union.

Anderson did not join the Union, advising his employer that his religious beliefs prohibited such action. Thereupon, the Union requested that Anderson be discharged and on June 16, 1972, General Dynamics discharged Anderson for the sole reason that he refused to become a member of or contribute to the Union.

After petitioning the Equal Employment Opportunity Commission, ("EEOC") Anderson brought this action. On February 2, 1977, a trial was held in this district before Judge Robert V. Denney, sitting by designation. Judge Denney held that because an accommodation of Anderson's religious beliefs was impossible under the circumstances of the case Title VII was not violated, and judgment was entered for defendants.

Anderson appealed to the Ninth Circuit Court of Appeals, *Anderson v. General Dynamics*, 589 F.2d 397 (9th Cir. 1978). That court held that a reasonable accommodation could be made with Anderson paying to a charity an amount of money equivalent to the applicable Union dues. The judgment of the trial court was reversed and the case was remanded back to this court to determine the amount of attorneys' fees to be awarded to Anderson pursuant to 42 U.S.C. § 2000e–5(k).

In their answers to the complaint, the defendants had raised the issue of the constitutional validity of the accommodation provisions of § 701(j) of Title VII, 42 U.S.C. § 2000e(j), in light of the Establishment Clause of the First Amendment to the United States Constitution. Judge Denney in his memorandum opinion, however, stated that since an accommodation was impossible "it is unnecessary to reach defendants' claim that Title VII violates the Establishment Clause of the First Amendment." The Ninth Circuit noted, at 589 F.2d 402, n. 5, that the constitutional issue was raised "at least obliquely" on appeal. Since the District Court did not reach the constitutional issue, however, the Ninth Circuit "also decline[d] to address any constitutional questions." *Id.*

■ On remand, the constitutionality of § 701(j) is again presented to this court by way of defendants' Motions for Summary Judgment. This issue is properly presented at this time.[1] Because of the controlling decision in this case by the Ninth Circuit, however, there is no issue as to any material fact affecting the constitutional issue.

The defendants urge this court to hold that the accommodation provision of § 701(j) is unconstitutional as an impermissible intrusion against the Establishment Clause of the First Amendment to the United States Constitution. The importance of the constitutional issue requires a detailed review of the history of § 701(j), the applicable constitutional standards, and the cases which have attempted to deal with the issue.

No Ninth Circuit or United States Supreme Court decision directly addresses this issue. A number of decisions from district courts and other Circuit Courts of Appeal have been cited by the parties as persuasive authority. These decisions reveal a tortu-

1. *See Burns v. Southern Pacific Transportation Co.*, 589 F.2d 403, 407–408 (9th Cir. 1978) which states that the constitutional question is a proper one for consideration on remand even if the question was not presented to the District Court and was raised for the first time in the Court of Appeals.

ous and inconclusive path toward resolution of this difficult issue.

## I

## LEGISLATIVE HISTORY

Congress enacted the Civil Rights Act of 1964[2] primarily to prohibit various forms of racial discrimination throughout the nation.[3] Specifically, Title VII[4] of the Act was designed to eliminate such discrimination in employment practices. Title VII also includes a phrase which prohibits employers or prospective employers from discrimination in the employment or discharge of workers on the basis of religion.[5] Religion was not defined in this enactment.

As stated in *TWA v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977):

The emphasis of both the language and the legislative history of the statute is on eliminating discrimination in employment; similarly situated employees are not to be treated differently solely because they differ with respect to race, color, religion, sex, or national origin.

*Id.* at 71, 97 S.Ct. at 2270.

The prohibition against religious discrimination soon raised the question of whether it was impermissible under 42 U.S.C. § 2000e–2(a)(1) to discharge or refuse to hire a person who for religious reasons refused to work during the employer's normal workweek. *Id.* at 72, 97 S.Ct. 2264. In 1966 an EEOC guideline dealing with this problem declared that an employer had an obligation under the statute "to accommodate to the reasonable religious needs of employees . . . where such accommodation can be made without serious inconvenience to the conduct of the business." 29 C.F.R. § 1605.1 (1967).

In 1967 the EEOC amended its guidelines to require employers "to make reasonable accommodations to the religious needs of employees and prospective employees where such accommodations can be made without undue hardship on the conduct of the employer's business." 29 C.F.R. § 1605.1 (1968).

In 1972 Congress attempted a definition of religion in its amendments to Title VII:

The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

§ 701(j), 42 U.S.C. § 2000e(j). The intent and effect of this definition and stricture was "to make it an unlawful employment practice under § 703(a)(1) [42 U.S.C. § 2000e–2(a)(1)] for an employer not to make reasonable accommodations short of undue hardship, for the religious practices of his employees and prospective employees." *TWA v. Hardison, supra*, 432 U.S. at 74, 97 S.Ct. at 2271.

This statutory obligation of accommodation to the religious beliefs of an employee is precisely what defendants assert is violative of the Establishment Clause of the First Amendment.

## II

## CONSTITUTIONAL STANDARDS

The First Amendment to the United States Constitution provides in part that "Congress shall make no law respecting an

---

**2.** 42 U.S.C. §§ 2000a, et seq.

**3.** The goal of the Civil Rights Act was to eliminate the "glaring . . . discrimination against the Negroes which exists throughout our nation." H.R.Rep.No.914, 88th Cong., 1st Sess. 18 (1963), U.S.Code Cong. & Admin.News 1964, pp. 2355, 2393.

**4.** 42 U.S.C. §§ 2000e to 2000e–15 (1970), as amended, 42 U.S.C. §§ 2000e to 2000e–17 (1974).

**5.** 42 U.S.C. § 2000e–2(a)(1) provides:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

establishment of religion . . ." The Supreme Court on many occasions has reiterated the principle enunciated in *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947):

> The "establishment of religion" clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. . . . In the words of Jefferson, the clause against establishment of religion by law was intended to erect "a wall of separation between Church and State."

*Id.* at 15–16, 67 S.Ct. at 511.

In determining whether a statute is, indeed, in violation of the proscription of the Establishment Clause, courts of the United States take the following approach, enunciated, after a consideration of precedent, in *Committee for Public Education v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973):

> Taken together, these decisions dictate that to pass muster under the Establishment Clause the law in question, first, must reflect a clearly secular legislative purpose, . . . second, must have a primary effect that neither advances nor inhibits religion, . . . and, third, must avoid excessive government entanglement with religion . . . [Citations omitted.]

*Id.* at 772–773, 93 S.Ct. at 2965.

## III

## APPLICABLE DECISIONS

A number of decisions have considered the EEOC guideline and § 701(j) in light of the *Nyquist* three-part approach with inconsistent results.

In *Dewey v. Reynolds Metals Co.*, 429 F.2d 324 (6th Cir. 1970), an employee was discharged because he failed to perform scheduled overtime work on Sunday as required by a collective bargaining agreement. The employee claimed that such Sunday work would violate his religious beliefs. The court held that there was no discrimination on the basis of religion, and hence no violation of Title VII, because all employees were treated alike. The court also noted that *if* the EEOC guideline was applied, the employer made a reasonable accommodation by instituting a system whereby an employee could find a replacement to work offensive or inconvenient hours.

In denying a petition for rehearing, the *Dewey* court stated:

> Nowhere in the legislative history of [Title VII] do we find any Congressional intent to coerce or compel one person to accede to or accommodate the religious beliefs of another. The requirement of accommodation to religious beliefs is contained only in the EEOC Regulations, which in our judgment are not consistent with [Title VII].
>
> \*　\*　\*　\*　\*　\*
>
> To construe the Act as authorizing the adoption of Regulations which would coerce or compel an employer to accede to or accommodate the religious beliefs of all of his employees would raise grave constitutional questions of violation of the Establishment Clause of the First Amendment. It is settled that the Government, in its relations with religious believers and nonbelievers, must be neutral. The Government is without power to support, assist, favor or handicap any religion.

*Id.* at 334–335. Such language by the Sixth Circuit makes it clear that not only was the EEOC guideline inconsistent with the dictates of Title VII, but it also might be a violation of the Establishment Clause. The *Dewey* case was affirmed by an equally divided Supreme Court, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971).[6]

---

**6.** Mr. Justice Harlan took no part in the consideration or decision of the case.

Judgment entered by an equally divided court is not "entitled to precedential weight." *Neil v.*

*Biggers*, 409 U.S. 188, 192, 93 S.Ct. 375, 378, 34 L.Ed.2d 401 (1972). *See also, TWA v. Hardison*, 432 U.S. 63, 73, n. 8, 97 S.Ct. 2264, 2271, 53 L.Ed.2d 113 (1977).

In *TWA v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), the Supreme Court was given an opportunity to determine whether the EEOC guideline was unconstitutional. In that case an employee was discharged because his religion prevented him from working on Saturdays. The court held that because no reasonable accommodation could be reached Title VII was not violated. Therefore, it did not have to decide the constitutional question. *Id.* at 70,[7] 97 S.Ct. at 2269.

The Sixth Circuit again examined the EEOC guidelines in *Reid v. Memphis Publishing Company*, 468 F.2d 346 (1972), and stated that doubts about the constitutionality were laid to rest by *Griggs v. Duke Power Company*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The Supreme Court in *Griggs*, a racial discrimination case, had held that it was not necessary to show discriminatory intent to make out a violation of Title VII; discriminatory effect was enough if not shown to be "related to job performance." The Sixth Circuit argued that this "business necessity" test applied to religious discrimination, so that if there was a discriminatory effect the employer must show a valid business reason for the employment practice. *Reid, supra*, 468 F.2d at 350.[8]

After Congress enacted § 701(j), the Sixth Circuit took a longer look at the "reasonable accommodation" provision in light of the *Nyquist* three-step approach. In *Cummins v. Parker Seal Co.*, 516 F.2d 544 (6th Cir. 1975), an employee claimed he had been discharged because his religion prohibited him from working on Sundays and other holy days. The majority held the statute was constitutional and the employer failed to make a showing that undue hardship would be occasioned by accommodating its business to the employee's religious practices. Judge Celebrezze in dissent argued that § 701(j) was in violation of the Establishment Clause.

The majority held that the reasonable accommodation rule, "like Title VII as a whole," had an adequate secular purpose: to prevent discrimination in employment. The court cited Senator Randolph's stated purpose in promoting the 1972 amendment:

> "[I]t is my desire and I hope the desire of my colleagues, to assure that freedom from religious discrimination in the employment of workers is for all time guaranteed by law." 118 Cong.Rec. 705 (1972).

*Id.* at 552. The court also expressed its view that, like the conscientious objector exemption to the draft, there was a pragmatic neutral purpose underlying the statute:

> [T]he reasonable accommodation rule reflects a legislative judgment that, as a practical matter, certain persons will not compromise their religious convictions and that they should not be punished for the supremacy of conscience.

*Id.* at 552–553.

Next, the majority held the statute had a "primary effect" of guaranteeing job security by restraining employers from enforcing uniform work rules that, although facially neutral, discriminated in effect against em-

It was the decision in *Dewey* which ultimately led to the 1972 amendment to Title VII, § 701(j). *See TWA v. Hardison, supra*, 432 U.S. at 73, 97 S.Ct. at 2271.

**7.** Justice Marshall in dissent seems to beg the question when he states that the regulation is consistent with the First Amendment:

> If the State does not establish religion over nonreligion by excusing religious practitioners from obligations owed by the State, I do not see how the State can be said to establish religion by requiring employers to do the same with respect to obligations owed the employer.

*Id.* at 90–91, 97 S.Ct. at 2280.

It should be noted that the Eighth Circuit had addressed the issue and held that the statute was constitutional in light of *Cummins v. Parker Seal Co.*, 516 F.2d 544 (6th Cir. 1975) to be discussed in this memorandum. *Hardison v. TWA*, 527 F.2d 33, 44 (8th Cir. 1975).

**8.** This may be the rule. This court finds unpersuasive the extension of such rule to the proposition that an obligation to accommodate someone's religion is constitutionally valid. In a later case, the Sixth Circuit admitted that it had not "discuss[ed] specifically the establishment clause problem." *Cummins v. Parker Seal Co.*, 516 F.2d 544, 551 (1975).

ployees holding certain religious convictions. *Id.* The majority also stated that § 701(j) did not raise the spectre of excessive government entanglement because it would require little or no contact between religious institutions and governmental entities. *Id.*

Judge Celebrezze disagreed. He pointed out that the expressed purpose of Title VII was to end discrimination based on certain factors that had no relation to an individual's ability and initiative. "The object was to make religion a meaningless factor in employment decisions." The new amendment, "[r]ather than 'putting teeth' into the Act, . . . mandates religious discrimination, thus departing from the Act's basic purpose." *Id.* at 556. As to the majority's second alleged "secular" purpose, he noted that the absence of a religious accommodation rule would not amount to punishment for religious conviction: "It would simply be a 'hands-off' attitude on government's part." *Id.*

Instead, Judge Celebrezze pointed to other remarks made by Senator Randolph which evidence the true purpose of the 1972 amendment: the promotion of certain religions whose followers' practices conflict with employers' schedules.[9]

As to the "primary effect" of the statute, Celebrezze argued that first, the religious accommodation requirement discriminates between religion and nonreligion; and, second, it discriminates among religions. Only those employees with "religious practices" who manifest their belief in acts requiring modification of an employer's work rules benefit from the statute.

Celebrezze did not address in detail the question of entanglement. He only noted that the disposition of complaints under the amendment would result in a procedural morass.

*Cummins* was affirmed by an equally divided Supreme Court, 429 U.S. 65, 97 S.Ct. 342, 50 L.Ed.2d 223 (1976).[10]

In *Yott v. North American Rockwell Corp.*, 428 F.Supp. 763 (1977) the Central District of California took the opportunity to rule on the question of constitutionality. The employee in that case refused to pay union dues because his religious beliefs prohibited him from membership in any union or other temporal organization. Because of his refusal, he was terminated by his employer pursuant to the terms of a collective bargaining agreement. The court held § 701(j) unconstitutional, specifically disapproving the majority analysis in *Cummins. Yott, supra*, 428 F.Supp. at 765.

The court noted that the "secular purpose" ascribed to the statute by the *Cummins* majority was that "the rule was designed to put teeth in the existing prohibition of religious discrimination." *Id.* at 766, citing *Cummins.* In response the court stated:

> Realistically nothing could be farther from the truth. . . . "Teeth" are put into the law by a comprehensive enforcement system which includes action by the Equal Employment Opportunity Commission and the Attorney General of the United States.

*Id.* The court stressed that government must remain neutral, which it could not do under § 701(j):

> Government simply cannot make the choice—termed reasonable or otherwise—that conduct which lacks either discriminatory intent or discriminatory application can be circumscribed because religious beliefs may oppose its implementation. Faced with such a decision government must declare its neutrality.

*Id.* at 767.

The Central District then appended a "Supplementary Opinion" in which it held that under the facts of the case no reasonable accommodation could be had. *Id.* at 767–770. On appeal to the Ninth Circuit, the Court of Appeals, at 602 F.2d 904 (9th Cir. 1979), seized upon the holding in the

---

9. The remarks are quoted at p. 790 of this memorandum.

10. Justice Stevens took no part in the consideration or decision of the case. *See also*, fn. 6, ante.

Supplementary Opinion, concluded that the trial court's decision that there could be no reasonable accommodation was not clearly erroneous and affirmed the decision "without reaching the question of whether Section 701(j) is unconstitutional." *Id.* at 906.

In January, 1979, the Western District of Pennsylvania ruled the statute unconstitutional in *Gavin v. Peoples Natural Gas Co.*, 464 F.Supp. 622. In *Gavin* an employee was discharged because he failed to perform his duty of raising and lowering the company's American flag. The employee asserted it was against his religious beliefs as a Jehovah's Witness.

After reviewing a selection of Establishment Clause cases, the court noted that the question of encouraging religion "is often one of balancing legitimate state interests against prohibited results or one of the degree of involvement between church and state." *Id.* at 627. The court went on to discuss § 701(j) in light of the *Nyquist* standard.

Citing *Cummins* and the District Court in *Yott*, the judge in *Gavin* "recognize[d] that there are valid arguments to be made on both sides of the test of 'secular purpose' with this amendment." *Id.* at 629. He also remarked that "whether the effect of the amendment is primarily to advance religion is an unsettled question." *Id.* He cited the dissent in *Cummins* and a number of religion cases which did not reach the constitutional issue in concluding that "individuals of certain religious beliefs have been benefitting under the 1972 amendment." Also citing *Catholic Bishop of Chicago v. N.L.R.B.*, 559 F.2d 1112, 1129 (7th Cir. 1977),

aff'd 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), the court noted that the employer raised serious constitutional challenges to the validity of the amendment under the "purpose" and "effect" tests. The judge believed, however, that "these questions could better be resolved by an appellate court on an appropriate record." *Gavin, supra*, 464 F.Supp. at 630.

The "excessive entanglement" prong of the *Nyquist* test was then considered. The *Gavin* court concluded that proceeding to trial on the facts of that case would necessarily lead to an entanglement of the court with religious beliefs, "requiring us to abandon the constitutionally-mandated 'hands off' attitude in matters of religion and conscience." *Id.* at 632. In this respect, the court pointed out the difficulties in making a determination of sincerity of religious belief and the fact that these decisions would ultimately have to be made by administrative agencies and courts. Hence, the court held it could not constitutionally apply the statute.[11]

In *Burns v. Southern Pacific Transportation Co.*, 20 EPD ¶ 30,184, pp. 11,977–11,978 (1979), the District of Arizona held the statute constitutional without discussion.

In *Tooley v. Martin-Marietta Corp.*, 476 F.Supp. 1027 (1979), the District of Oregon sought a balance between the Free Exercise Clause and the Establishment Clause. This case involved a religious proscription against payment of union dues. The court held that the religious accommodation provision of Title VII "accommodates the free exercise of religion without violating the Establishment Clause." *Id.* at 1029.[12] The

---

11. The Third Circuit reversed and remanded *Gavin* without reaching the constitutional issue. *Gavin v. Peoples Natural Gas Co.*, 613 F.2d 482 (3rd Cir. 1980). The court held that no summary judgment could have been properly rendered under F.R.Civ.P. 56 because there remained an issue of material fact, namely, whether the alleged accommodation complied with Title VII:

"The general rule . . . is to avoid constitutional issues unless essential to the decision of the case.

\* \* \* \* \* \*

. . . [T]he constitutional issue presupposes lack of accommodation. However, the question of whether PNGC accommodated to Gavin's beliefs . . . was never resolved."
*Id.* at 484–485. The case was remanded to the District Court for this determination.

12. Also *see Jordan v. North Carolina Nat'l Bank*, 399 F.Supp. 172, 179–180 (W.D.N. Carolina 1975) where the court held the statute constitutional by striking the balance in favor of free exercise.

court gave the *Nyquist* criteria the following total treatment:

> If this test governs these facts, the test is satisfied. It is a neutral provision with a satisfactory purpose—to prevent discrimination resulting from the unreasonable refusal to accommodate religious beliefs and practices. A reasonable accommodation will not favor plaintiffs or their religion because plaintiffs agree to contribute to charity an amount equal to union dues. A reasonable accommodation will not result in government entanglement with religion greater than approved in *Yoder, Gillette, Walz,* and *Sherbert.*[13]

*Tooley, supra,* 476 F.Supp. at 1030. The court held that the plaintiffs were entitled to an injunction prohibiting their discharge as long as they made contributions to charity equal to union dues.

Some state courts have found a duty to accommodate in state employment statutes.[14] But only two courts have confronted the constitutional issue, both finding no violation of the Establishment Clause.[15] The commentators are in disagreement.[16]

## IV

## DECISION OF THIS COURT

Upon consideration of the arguments and authorities presented by the parties, and after considerable research and contemplation, this court finds itself in agreement with the dissent in *Cummins* and the district courts' analyses in *Gavin* and *Yott.* Accordingly, the reasonable accommodation obligation of Title VII, contained in § 701(j), is hereby held to be unconstitutional as a violation of the Establishment Clause of the First Amendment to the United States Constitution.

Neutrality is the heart of the religion clauses of the First Amendment. The Supreme Court has steadfastly upheld Jefferson's injunction that the government must remain neutral in religious affairs with the First Amendment standing as "a wall of separation between Church and State." *Everson v. Board of Education,* 330 U.S. 1, 16, 67 S.Ct. 504, 512, 91 L.Ed. 711 (1947); *McCollum v. Board of Education,* 333 U.S. 203, 211, 68 S.Ct. 461, 465, 92 L.Ed. 649 (1948). As stated by Judge Celebrezze in *Cummins,* "by 42 U.S.C. § 2000e(j), the Federal Government has breached the wall." 516 F.2d at 555.

It is, of course, fundamental that the First Amendment protects the free exercise of all religions; hence, the government may not place an "undue burden" on any religious free exercise without showing a "compelling state interest." But the fact that government may not penalize particular re-

---

**13.** *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Gillette v. U. S.,* 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); *Walz v. Tax Commission,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970); *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

**14.** The courts of California, Alaska, Maine and Wisconsin have found such a duty. *Rankins v. Commission of Professional Competence of Ducor,* 24 Cal.3d 167, 154 Cal.Rptr. 907, 593 P.2d 852 (1979); *Wondzell v. Alaska Wood Products, Inc.,* 583 P.2d 860 (Alaska 1978); *Maine Human Rights Commission v. Local 1361, United, etc.,* 383 A.2d 369 (Me.1978); *American Motors Corp. v. Dept. of Industry, Labor & Human Relations,* 93 Wis.2d 14, 286 N.W.2d 847 (1979).

**15.** California and Wisconsin. See fn. 14, ante.

**16.** *See, e. g.,* Wheeler, "Establishment Clause Neutrality and the Reasonable Accommodation Requirement," 4 Hastings Const.L.Q. 901, 931–

934 (1977). The author contends that a reasonable accommodation rule is constitutional as seen under a theory of benevolent neutrality:

> A characterization of benevolent neutrality would be one of a broad area between "what is prohibited by the establishment clause and what is required in the name of free exercise" within which the legislature has the flexibility to act in order to favor the policy of free exercise.

*Id.* at 932. *Cf.* Note, "Can the Government Require Accommodation of Religion at the Private Job-Site?" 62 Va.L.Rev. 237 (1976); Comment, "Title VII and Religious Discrimination: Is Any Accommodation Reasonable under the Constitution?" 9 Loyola Univ.L.J. 413 (1978); Comment, "Religious Discrimination in Employment—The Undoing of Title VII's Reasonable Accommodation Standard," 44 Brooklyn L.Rev. 598 (1978). These three commentators argue that the statute is unconstitutional.

ligions does not mean that Congress may favor particular religions. "The Free Exercise Clause . . . does not offer a sword to cut through the strictures of the Establishment Clause." *Cummins, supra*, 516 F.2d at 557 (Celebrezze, dissent). Congress did not have to enact § 701(j) to prevent Free Exercise Clause abuses. The EEOC Regulation and § 701(j) responded merely to alleged private discrimination in employment. In the absence of the regulation, then, there would be no state action and, consequently, no free exercise problem. The tension between the Free Exercise and Establishment Clauses is not present in this case.[17]

In essence, the accommodation provision mandates religious discrimination. It requires an overt preference for the religious beliefs of certain employees and dictates that an employer must go out of his way to accommodate minority beliefs, even if such accommodation is detrimental to other employees. As such, its operation runs directly contrary to the avowed purpose of Title VII.

The true purpose of the accommodation provision is clearly evident in the remarks of Senator Randolph, who authored the 1972 amendment. Senator Randolph stated that his purpose in sponsoring the amendment was to assure increased religious attendance by those whose religious beliefs prohibited work on certain days. Randolph made no mention of any business necessity or benefit to the general public. No clearly secular legislative purpose is manifested. The intent was unequivocal when he stated:

> [T]here has been a partial refusal at times on the part of employers to hire or continue in employment employees whose religious practices rigidly require them to abstain from work in the nature of hire [sic] on particular days. So there has been . . . a dwindling of membership of some religious organizations because of the situation.

My own pastor in this area, Rev. Delmer Van Horn, has expressed his concern and distress that there are certain faiths that are having a very difficult time, especially with younger people, and understandably so, with reference of a possible inability of employers on some occasions to adjust work schedules to fit the requirements of the faiths of some of their workers.

118 Cong.Rec. 705 (1972). These remarks apparently served as the compelling impetus for the amendment.[18]

The primary effect of religious preference, as sought by Senator Randolph, is a preconceived and direct benefit to particular religions. The accommodation requirement discriminates between religion and nonreligion by favoring only those employees with "religious" beliefs. In addition, the requirement discriminates among religions by favoring only those beliefs which require modification of an employer's work rules. As such it fails the second test of *Nyquist* in that it does not have "a primary effect that neither advances nor inhibits religion."

Finally, the enforcement of § 701(j) would result in an impermissible government entanglement with religion. As the Supreme Court stated in *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) which concerned a property tax exemption for religious institutions:

> The test is inescapably one of degree. . . . In analyzing [the statute involved] the questions are whether the involvement is excessive, and whether it is a continuing one calling for official and continuing surveillance leading to an impermissible degree of entanglement.

*Id.* at 674–675, 90 S.Ct. at 1414. Under Title VII, an individual may take a grievance to the EEOC and also may file a court action. To determine whether a reasonable accommodation is necessary, these adjudica-

---

17. *See, generally*, Note, "Can the Government Require Accommodation of Religion at the Private Job-Site?" 62 Va.L.Rev. 237, 244–246 (1976).

18. *See, generally*, Comment, "Title VII and Religious Discrimination: Is Any Accommodation Reasonable under the Constitution?" 9 Loyola Univ.L.J. 413, 423–424 (1978).

tory bodies must not only review the work schedules allegedly disfavoring particular religions, but also must inquire into the sincerity of the religious beliefs involved and the validity of the religious nature of the claim. These are not easy questions and the search for answers will surely involve the courts in internal church disputes or matters of religious doctrine. Religion would have to be defined and its proper exercise delineated. This process would be difficult and time-consuming,[19] with the adjudications subject to review and remand and revision. The procedural history of the cases cited in this memorandum, with repeated appeal and remand, manifest a reluctance to deal with this problem. When the courts do attempt to tackle the merits of a claim of religious belief, the results are often confusing, inconsistent and evasive.

Because of the potential for recurring litigation before courts and government agencies concerning difficult questions of the exercise of religious beliefs, the reasonable accommodation clause of Title VII causes excessive government entanglement with religion.

It is realized that the court in declaring the accommodation requirement unconstitutional may cause David Anderson to suffer adverse consequences. However, the greater purposes, of Title VII, ensuring equal treatment in employment to all persons, and of the Establishment Clause, requiring government neutrality, lead inescapably to the conclusion of unconstitutionality.

This court concurs in the wisdom of Judge Learned Hand, expressed in *Otten v. Baltimore & O. R. Co.*, 205 F.2d 58, 61 (2nd Cir. 1953):

> The First Amendment protects one against action by the government, . . . but it gives no one the right to insist that in the pursuit of their own interests others must conform their conduct to his own religious necessities . . . We must accommodate our idiosyncracies, re-

ligious as well as secular, to the comprises necessary in communal life; and we can hope for no reward for the sacrifices this may require beyond our satisfaction from within, or our expectations of a better world.

Accordingly, it is the decision of this court that defendants are entitled to judgment as a matter of law and their Motions for Summary Judgment are hereby GRANTED.[20]

---

**19.** For a discussion of the problems involved in such a process of definition *see* Edwards and Kaplan, "Religious Discrimination and the Role of Arbitration under Title VII," 69 Mich.L.Rev. 599, 614–619 (1971).

**20.** Because of the within holding of unconstitutionality, it is unnecessary to reach the issue of attorneys fees.