**Timothy O. ISAAC**

v.

**BUTLER'S SHOE CORPORATION and John Does A, B, C and D.**

**Civ. A. No. C80–1083A.**

United States District Court, N. D. Georgia, Atlanta Division.

Dec. 19, 1980.

---

Michael Weinstock, Atlanta, Ga., for plaintiff.

Jeffrey B. Berg, Simon A. Miller, and Alan M. Gerlach, Jr., of Arnall Golden & Gregory, Atlanta, Ga., for defendants.

## ORDER

NEWELL EDENFIELD, District Judge.

This employment discrimination action, alleging violations by defendant Butler's Shoe Corporation (Butler's) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, and including a diversity claim against the four individual defendants for tortious interference with plaintiff's employment,[1] is before the court on defendant Butler's motions to dismiss or for summary judgment, Rule 12(b)(6), Fed. R.Civ.P., and to strike plaintiff's jury demand.

The facts, as they appear from the pleadings, indicate that plaintiff initially was employed by defendant Butler's in 1969. First employed as a shoe salesman, plaintiff later became a store manager, the position he held at the time his employment with Butler's ended on April 22, 1976.

Plaintiff claims that, in 1976, in conformity with his religious beliefs and his affiliation with the Church of God, it became necessary for him to grow a beard. He claims that at that time he brought the religious reasons for growing a beard to Butler's attention.

[1]. Plaintiff has filed as Exhibit B to his brief opposing this motion a proposed amended complaint substituting four named parties in place of the "John Does" named in his original complaint and omitting the claim for breach of contract contained in his original complaint.

Defendant Butler's has indicated to the court by letter dated October 20, 1980 that it does not oppose the filing of plaintiff's proposed amended complaint and it is therefore ALLOWED filed as of the date of this order.

On March 4, 1976, plaintiff alleges, he requested from his supervisor a personal leave in order to attend a religious gathering in Kansas City, Missouri. Although the record contains no details, plaintiff apparently claims that he was "constructively discharged" as a result both of his growing a beard and his attendance at this religious gathering.

Defendant Butler's now moves to dismiss, or for summary judgment, on several grounds.

I. The first ground defendant advances in support of dismissal is that the reasonable accommodation provision contained in section 701(j) of Title VII, 42 U.S.C. § 2000e(j), is unconstitutional.

Forty-two U.S.C. § 2000e–2(a)(1) provides in pertinent part:

(a) It shall be an unlawful employment practice for an employer—

(1) to ... discharge any individual ... because of such individual's ... religion ....

Forty-two U.S.C. § 2000e(j), added by Congress in the 1972 amendments to this title, defines religion as follows:

The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

This subsection is commonly referred to as the "religious accommodation" provision of Title VII. It is a distillation of two similar regulations promulgated by the Equal Employment Opportunity Commission (EEOC) that were enacted in 1966 and 1967. 29 C.F.R. § 1605.1.

Defendant Butler's argues that this provision violates the establishment clause of the first amendment to the United States Constitution ("Congress shall make no law respecting an establishment of religion ...."). In support of its motion, Butler's cites a number of cases that have ruled upon the constitutionality of this religious accommodation provision.[2] In response, plaintiff cites several similar cases that have upheld the statute.[3] The positions taken by these opposing lines of cases are exemplified by two of them, one upholding the reasonable accommodation provision, the other striking it down.

In *Cummins v. Parker Seal Co.*, 516 F.2d 544 (6th Cir. 1975), plaintiff, a production scheduler, brought suit against his former employer claiming that he had been discharged in violation of Title VII because his religion prohibited him from working on Saturdays and certain other holy days. In particular, plaintiff alleged that his discharge violated 29 C.F.R. § 1605.1, the EEOC regulation that was the forerunner of, and essentially identical to, 42 U.S.C. § 2000e(j), the religious accommodation provision of Title VII. In its opinion, the circuit court first recognized its expression of doubt in an earlier case about the constitutionality of the religious accommodation rule. It went on, however, to uphold the provision, after applying the three-part test for analyzing an establishment clause challenge to a statute laid down in *Committee for Public Education v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973). With respect to the first part of the test, which is whether the statute reflects a clearly secular legislative purpose, the court found that the purpose of the statute was to prevent discrimination in employment. The advancement of religion, cited by opponents as the purpose of the amendment, was a natural consequence of the law, the court stated, but not its direct aim. The second part of the *Nyquist* test, whether

---

2. *Cummins v. Parker Seal Co.*, 516 F.2d 544, 554 (6th Cir. 1975) (Celebrezze, J., dissenting); *Anderson v. General Dynamics Convair Aerospace Div.*, 489 F.Supp. 782 (S.D.Cal.1980); *Gavin v. Peoples Natural Gas*, 464 F.Supp. 622 (W.D.Pa.1979); *Yott v. North American Rockwell Corp.*, 428 F.Supp. 763 (C.D.Cal.1977).

3. *Cummins v. Parker Seal Co., supra; Tooley v. Martin-Marietta Corp.*, 476 F.Supp. 1027 (D.Or. 1979); *Jordan v. North Carolina Natl. Bank*, 399 F.Supp. 172 (W.D.N.C.1975).

the statute has a primary effect that neither advances nor inhibits religion, was also found by the court to have been satisfied, since the court found that the practical effect of the provision was to restrain employers from enforcing uniform, facially neutral work rules that discriminate in effect against employees holding certain religious beliefs. The *Cummins* court also failed to find any violation of the third *Nyquist* test, that the statute must avoid excessive government entanglement with religion. In sum, the Sixth Circuit in *Parker* held that the religious accommodation provision of Title VII satisfied all three *Nyquist* tests and, therefore, it did not violate the establishment clause of the first amendment.

In contrast, a recent district court case is illustrative of those courts that have taken the opposite view. In *Anderson v. General Dynamics Convair Aerospace Div.*, 489 F.Supp. 782 (S.D.Cal.1980), the court in a well written and carefully reasoned opinion reached the conclusion that the religious accommodation provision violates all three *Nyquist* tests. The first test is breached, the court ruled, since the true purpose of the provision, advancement of religion, is evident in the remarks of Senator Jennings Randolph, the statute's sponsor. The court stated:

> The true purpose of the accommodation provision is clearly evident in the remarks of Senator Randolph, who authored the 1972 amendment. Senator Randolph stated that his purpose in sponsoring the amendment was to assure increased religious attendance by those whose religious beliefs prohibited work on certain days. Randolph made no mention of any business necessity or benefit to the general public. No clearly secular legislative purpose is manifested. The intent was· unequivocal when he stated:
>
> > [T]here has been a partial refusal at times on the part of employers to hire or continue in employment employees whose religious practices rigidly require them to abstain from work in the nature of hire [sic] on particular days. So there has been . . . a dwindling of

membership of some religious organizations because of the situation.

> My own pastor in this area, Rev. Delmer Van Horn, has expressed his concern and distress that there are certain faiths that are having a very difficult time, especially with younger people, and understandably so, with reference of a possible inability of employers on some occasions to adjust work schedules to fit the requirements of the faiths of some of their workers.

118 Cong.Rec. 705 (1972). These remarks apparently served as the compelling impetus for the amendment. (Footnote omitted.)

The second *Nyquist* test also was violated, the court in *Anderson* held, since the primary effect of this religious preference, as sought by Senator Randolph, is "a preconceived and direct benefit to particular religions." Those religions, the court found, were religions that require modification of an employer's work rules. An equally improper effect of the provision, the court continued, was its impermissible discrimination between religion and non-religion, since the statute benefits only those employees who hold religious beliefs.

Finally, the court concluded, the statute failed the third *Nyquist* test, since the enforcement of the statute would result in an impermissible entanglement of government with religion. In support, the court noted that enforcement would require the EEOC and the courts to review work schedules allegedly disfavoring certain religious beliefs involved and to inquire into the validity of the religious nature of the claim. The court in *Anderson* went on to state:

> Religion would have to be defined and its proper exercise delineated. . . . When the courts do attempt to tackle the merits of a claim of religious belief, the results are often confusing, inconsistent and evasive.

> Because of the potential for recurring litigation before courts and government agencies concerning difficult questions of the exercise of religious beliefs, the rea-

sonable accommodation clause of Title VII causes excessive government entanglement with religion.

In the absence of any binding authority to guide it, this court finds the reasoning and conclusion set forth in *Anderson* to be persuasive. Accordingly, the court holds that the religious accommodation provision of Title VII, 42 U.S.C. § 2000e(j), violates the establishment clause of the first amendment to the United States Constitution.

Prior cases dealing with this question have exhaustively detailed the legislative history of the offending provision, as well as the various Supreme Court rulings that have outlined the parameters of the first amendment, and it would add little to the corpus juris to repeat that here. Two points do merit a brief discussion, however.

The first point, briefly noted in *Anderson*, is that the situation here presented does not implicate a conflict between the establishment clause and the free exercise clause of the first amendment. Those provisions state: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof". Here, the establishment clause violation was triggered by congressional action in enacting this particular provision of Title VII. By striking down the provision, no free exercise problem arises, since no congressional action will have taken place. The first amendment religious freedoms are not triggered by congressional inaction, but rather by its failure to adhere to the admonition that "Congress shall make no law."

The second point, and one that seems to have received little previous attention, is that even though this religious accommodation requirement is unconstitutional, the plaintiff is not automatically foreclosed from pursuing his claim. As the Supreme Court noted in *Trans World Airlines v. Hardison*, 432 U.S. 63, at 74 n.9, 97 S.Ct. 2264, at 2272 n.9, 53 L.Ed.2d 113 the legislative history of the religious accommodation provision demonstrates that it was enacted in large part to counter the decisions in *Dewey v. Reynolds Metals Co.*, 429 F.2d 324 (6th Cir. 1970), *aff'd by an equally divided court*, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971), and *Riley v. Bendix Corp.*, 330 F.Supp. 583 (M.D.Fla.1971), *rev'd*, 464 F.2d 1113 (5th Cir. 1972). *Dewey* held, *inter alia*, that plaintiff had failed to prove religious discrimination by defendant since plaintiff could not show any subjective intent by the employer to discriminate. Although at the time of that ruling the question of subjective versus inferred intent was unsettled, the Supreme Court subsequently held in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 858 (1971), that a showing of disparate impact of a challenged employment practice will create a presumption of intentional discrimination. Thus the protection that Congress sought to provide by enacting section 701(j) of Title VII has in large part been rendered redundant and unnecessary by the Supreme Court.

The other apparent concern of Congress was the ruling by the district court in *Riley* that the EEOC regulation requiring religious accommodation, the virtually identical forerunner to section 701(j), was improperly promulgated as beyond the intent of Congress. Although that ruling subsequently was reversed by the Fifth Circuit, the reversal did not occur until after the 1972 amendments to Title VII, including section 701(j), were enacted. That clarification by Congress of its intent by enacting the regulation into statute is now academic, however, since in this court's judgment the requirement of reasonable accommodation violates the first amendment.

Plaintiff in this case may still be able to make out a claim of religious discrimination by showing that Butler's no-beard policy impacts excessively upon persons who grow beards for religious reasons or by showing some disparate impact or treatment related to Butler's refusal to allow him personal leave to attend the religious gathering. The burden of going forward would then shift to Butler's to articulate a legitimate, nondiscriminatory necessity for its policies or actions. Plaintiff could then attempt to rebut any such reasons advanced by show-

ing that such reasons, if proven, were pretextual. In addition, plaintiff's complaint makes a cryptic allegation that members of another (unspecified) race were allowed to have beards for purely social reasons, although he was not. If proven, such conduct may well constitute unlawful disparate treatment by Butler's that violates the prohibition against discrimination based upon race or color. Plaintiff may wish to amplify those allegations in an amended complaint, if he intends seriously to pursue that claim.

In accordance with the foregoing, plaintiff is ALLOWED thirty (30) days to amend his complaint to clarify his allegations of a violation by Butler's of 42 U.S.C. § 2000e–2(a)(1), based upon race, religion or both, if he so chooses.

■ II. Defendant Butler's also argues that the court lacks subject-matter jurisdiction over this action, since, Butler's claims, plaintiff did not file this action within ninety days from his receipt of the EEOC right-to-sue letter as required by 42 U.S.C. § 2000e–5(f)(1). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). Compliance with that filing deadline has been termed a jurisdictional prerequisite. *Genovese v. Shell Oil Co.*, 488 F.2d 84 (5th Cir. 1973). Defendant supports its claim by pointing out that plaintiff's right-to-sue letter, a copy of which defendant has appended to its motion, bears the date March 21, 1980. It argues that, in order for this action to have been timely filed, plaintiff must not have received the right-to-sue letter until March 28, 1980 or later, an eventuality that defendant asserts "presumably" would not have occurred.

In response plaintiff has filed an affidavit in which he testifies that he received the right-to-sue letter "on or after March 28, 1980."

Pretermitting any discussion of the United States Postal Service's speed of mail delivery, plaintiff's affidavit has created a factual issue for resolution at trial, the existence of which precludes summary judgment. Accordingly, the issue of whether plaintiff received his right-to-sue letter before or after March 28, 1980 must be resolved at trial, and summary judgment on this ground is DENIED.

III. Defendant Butler's also argues that its no-beard policy could not as a matter of law constitute religious or racial discrimination against plaintiff, since a no-beard policy affects only a mutable individual characteristic. In support of this argument defendant cites several cases.

The first cited case, *Willingham v. Macon Telegraph Publishing Co.*, 352 F.Supp. 1018 (M.D.Ga.1972), *rev'd*, 482 F.2d 535 (5th Cir. 1973), *vacated*, 507 F.2d 1084 (en banc), is inapposite to the issue of religious discrimination. There the Fifth Circuit held that a hair-length limit for men did not constitute unlawful *sex* discrimination since it involved a mutable personal characteristic that did not implicate a fundamental right such as marriage or childbearing. In contrast, the issues in this case should plaintiff amend his complaint may be (a) whether, even if defendant Butler's no-beard policy was facially neutral and uniformly applied (which plaintiff alleges it was not), the policy had a disparate impact upon plaintiff's religious beliefs; and (b) whether the no-beard policy was applied to plaintiff but not to members of a different *race*, which might constitute impermissible disparate treatment.

The second case cited by defendant, *EEOC v. Rollins, Inc.*, 8 FEP Cas. 492 (N.D. Ga.1974) (Freeman, J.), is not only unpersuasive but in fact supports plaintiff's position on this issue. There this court declined to grant dismissal or summary judgment on the pleadings before the court on the ground that it could not say as a matter of law that an employer's refusal to allow a black muslim employee to wear certain clothing may never amount to religious discrimination within the purview of Title VII. The court cited the panel opinion in *Willingham*, later vacated, as in "accord" with its ruling.

Despite the holding of that case, however, defendant advances the argument that,

since that panel opinion in *Willingham* cited by Judge Freeman was later vacated and overturned on rehearing, the district court in *Rollins* would likely have ruled differently had it had the en banc opinion before it when it ruled. Defendant's conclusion misses the mark, however. The court in *Rollins* principally relied on *Cook & Nichol, Inc. v. Plimsoll Club*, 451 F.2d 505 (5th Cir. 1971), as authority for its ruling. That case merely reiterates, albeit forcefully and admonitorily, the settled rule that dismissal for failure to state a claim is inappropriate unless it appears to a certainty that plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim. Judge Freeman only cited *Willingham* as tangential support for the *Rollins* ruling, and this court is not persuaded that *Rollins* would have been decided differently had the en banc opinion in *Willingham* been handed down prior to the *Rollins* order.

The third case cited by defendant, *Thomas v. Firestone Tire & Rubber Co.*, 392 F.Supp. 373 (N.D.Tex.1975), is equally unpersuasive in that it involved alleged discrimination based upon sex and race, not religion.

Defendant has cited only two cases that in any way implicate alleged religious discrimination.

In *Cupit v. Baton Rouge Police Dept.*, 277 So.2d 454 (La.App.1973), a no-beard policy by the police department was upheld against religious discrimination charges. The case was a constitutional challenge to a departmental regulation, however, rather than a Title VII claim, and did not involve the statutory provisions at issue here. For that reason, it does not support defendant's position that it could not as a matter of law have violated Title VII through its no-beard policy.

Similarly, *Eastern Greyhound Lines Div. v. New York State Div. of Human Rights*, 27 N.Y.2d 279, 317 N.Y.S.2d 322, 265 N.E.2d 745 (Ct.App.1970), also cited by defendant, involved a state human rights statute, not Title VII, and thus sheds no light upon this issue of statutory construction. That state statute varies widely in its structure from Title VII. It contains a lengthy and detailed set of provisions as to religious sabbaths and holy days, together with exceptions for emergencies, for health and safety occupations, with no mention of religious dress or appearance practices. *See* N.Y. Executive Law, Art. 15 (McKinney).

█ This court is not convinced to a certainty that plaintiff may not be entitled to recover under any state of facts that could be proved in support of his claims, and therefore dismissal for failure to state a claim is inappropriate at this time. *See Cook & Nichol, Inc. v. Plimsoll Club, supra.*

Based upon the foregoing, Butler's motion to dismiss on the ground that its no-beard policy could not as a matter of law violate Title VII is DENIED.

IV. Defendant Butler's also moves to strike plaintiff's jury demand. In plaintiff's amended complaint, allowed filed by this order, he alleges two counts upon which he seeks relief. The first count is based upon defendant's alleged violation of Title VII, and plaintiff apparently does not seek a jury trial upon this count. The second count alleges a conspiracy by four named individual defendants to injure plaintiff's work record and business reputation. Plaintiff asserts that this conspiracy and acts in furtherance of it resulted in his termination from employment with Butler's. He prays in his complaint for a jury trial on this count, which relies on diversity of citizenship of the parties for jurisdiction.

In support of its motion, defendant cites several cases including *Blum v. Gulf Oil Corp.*, 597 F.2d 936 (5th Cir. 1979); *United States v. United States Steel Corp.*, 520 F.2d 1043 (5th Cir. 1975); *Lynch v. Pan American World Airways, Inc.*, 475 F.2d 764 (5th Cir. 1973); and *Baker v. City of Detroit*, 458 F.Supp. 379 (E.D.Mich.1978). Although these cases are distinguishable from the situation presented here, since none of them deal with distinct diversity claims against non-employer defendants, plaintiff has not opposed this motion and it is therefore GRANTED. Local Rule 91.2.

V. In summary, the court GRANTS IN PART defendant Butler's motion to dismiss, GRANTS defendant Butler's motion to strike plaintiff's jury demand, ALLOWS FILED plaintiff's proposed amended complaint appended to his opposition to defendant Butler's motion to dismiss, and ALLOWS plaintiff thirty (30) days to re-amend his complaint in light of this order. The clerk is DIRECTED to modify the court's records to reflect the names of the four individual defendants named in the amended complaint.