**Peter James HOWARD, Plaintiff-Appellant,**

v.

**HAVERTY FURNITURE COMPANIES, INC., Defendant-Appellee.**

No. 78–2071.

United States Court of Appeals, Fifth Circuit.

April 7, 1980.

---

Louis K. Polonsky, Atlanta, Ga., for plaintiff-appellant.

Smith, Cohen, Ringel, Kohler & Martin, Robert W. Beynart, Atlanta, Ga., for defendant-appellee.

Before INGRAHAM, RONEY and THOMAS A. CLARK, Circuit Judges.

RONEY, Circuit Judge:

Plaintiff seeks relief under the provisions of Title VII of the 1964 Civil Rights Act (42 U.S.C.A. §§ 2000, *et seq.*), claiming that in firing him his employer discriminated against him on account of his religion. We affirm the district court's conclusion that the employer did not fail to make the statutorily required "reasonable accommodation" to Howard's religion.

The 1964 Civil Rights Act makes it unlawful to discharge an employee because of his religion. 42 U.S.C.A. § 2000e–2(a). By statutory definition, religion includes all aspects of religious practice,

unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C.A. § 2000e(j).

The leading case setting forth the standard for evaluating an employer's acts against the requirement of making reasonable accommodation without undue business hardship is *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977). Directly applying the statute and the outlines of *Trans World Airlines,* the district court concluded that the facts constituted a reasonable accommodation to plaintiff Howard's religious practice.

Haverty Furniture Companies, Inc. (Haverty) is engaged in the retail sale of furniture, having 67 stores in 10 states and maintaining a central warehouse facility in Atlanta to service retail outlets. Plaintiff was employed at Haverty's warehouse for nine years before he was fired. Plaintiff's job involved "pulling" warehouse merchandise from the warehouse stock and transporting it to an area where it would be loaded on trucks for delivery to retail customers.

Three years after commencing employment with Haverty, plaintiff received a minister's license in the Methodist Church, and eventually was given a part-time position as pastor for three rural churches in Pike County, Georgia. He was apparently able to perform both his pastoral duties and

his duties as an employee of Haverty without incident or difficulty until 1971. In that year, however, plaintiff took off seven days other than regular vacation days in order to perform church related duties. Five of those absences were authorized by his employer and two were not. The first unauthorized absence occurred in May when plaintiff requested time off and his request was denied. When plaintiff took off anyway, he was suspended for two days without pay and warned that a recurrence of such an absence could result in his discharge.

The second unauthorized absence was the incident leading to plaintiff's dismissal. One of plaintiff's parishoners died and the funeral was set by the decedent's family for Saturday. On the preceding Thursday, plaintiff asked his supervisor if he could have Saturday off in order to officiate at the funeral. The supervisor said that he could not tell at that time whether plaintiff could have Saturday off. There was no further contact between plaintiff and his supervisor until Friday at about five o'clock in the afternoon. Plaintiff was then told he could not have Saturday off. At that point in the conversation, the supervisor was interrupted by a telephone call and while he was on the phone, plaintiff left. Plaintiff did not report for work on Saturday and when he did report on Tuesday, his next scheduled workday, he was told he was fired because of his unauthorized absence.

Due to a large sale in progress, the Saturday in question was extremely busy at the warehouse. Two supervisors performed the functions of plaintiff's job and plaintiff's absence caused an inefficiency in the warehouse operation and detracted from the supervisors' performance of their normal duties. The volume of business was so great that the warehouse worked both Sunday and Monday, which were normally off days at the warehouse operation.

Although plaintiff's religion would have permitted a substitute minister to officiate at the funeral, he made no effort to obtain one. Likewise, no effort was made to change the time of the funeral. Neither plaintiff nor Haverty made any effort to rearrange plaintiff's work schedule to make up for his Saturday absence.

The district court found that under the arrangement between plaintiff and Haverty, plaintiff was allowed to take time off to tend to his pastoral needs any time he desired, subject only to the employer's business needs. Indeed, in the week after plaintiff's first unauthorized absence, Haverty had granted him permission to take a day off for religious reasons. At about that same time, Haverty offered to put plaintiff on part-time status, which would have allowed him to take time off whenever he wished. Plaintiff declined this offer.

Under these facts, the district court concluded that Haverty had made a reasonable accommodation to plaintiff's religious needs, had shown an undue hardship when plaintiff absented himself without permission, and therefore did not violate Title VII when it discharged plaintiff.

On appeal, plaintiff contends the district court required him to show discriminatory intent. The Supreme Court held in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), that it is not necessary to show specific intent to discriminate in order to prove a violation of Title VII. The record in this case makes it clear, however, that the district court did not fault the plaintiff for failing to prove discriminatory intent on the part of the employer. The only reference to intent in the district court's opinion was its statement that, in light of the lack of evidence of discriminatory intent, the good faith subjective judgment of plaintiff's supervisor that plaintiff's absence would disrupt the operation of the warehouse was entitled to great weight.

■ The courts of this Circuit are not strangers to evaluation of testimony in light of whether an intent to discriminate has been demonstrated. Where facts strongly indicate such an intent, the courts have correctly discounted testimony that actions were committed for other reasons. *See Burdine v. Texas Dept. of Community Affairs,* 608 F.2d 563, 568 (5th Cir. 1979);

*Watkins v. Scott Paper Co.,* 530 F.2d 1159, 1178 (5th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 129 (1976). The converse can be true. In the absence of facts evincing a discriminatory intent, the trier of fact is entitled to give more credit to testimony justifying actions as nondiscriminatory. The court here did nothing more. It did not decide the plaintiff must lose because he did not prove intent.

■ Plaintiff also contends that Haverty did no more than assert undue hardship. There is substantial evidence, however, showing genuine business need for plaintiff's presence at work on the day in question and the disruption caused by plaintiff's absence. Supervisory personnel were required to perform plaintiff's job to the detriment of their regular duties. The *Trans World Airlines* opinion specifically addresses such a requirement as undue hardship not required for reasonable accommodation. The Supreme Court there rejected the suggestion that the employer "would suffer no undue hardship if it were required to replace Hardison either with supervisory personnel or with qualified personnel from other departments." 432 U.S. at 84, 97 S.Ct. at 2277. The Court found such a requirement "would involve costs to [the employer] in the form of lost efficiency in other jobs," and such costs were more than *de minimus. Id.* The fact that Haverty incurred no direct money cost from plaintiff's absence is not controlling. The finding of the district court that there was undue hardship is well supported in the record and is not clearly erroneous. The district court did not err in concluding that Haverty did not violate Title VII by discharging plaintiff.

Having treated this case in the light most favorable to plaintiff's claim that he was fired because of his religious practices, we need not evaluate the district court's doubts as to whether there was any religious discrimination involved at all, or whether plaintiff's difficulties resulted from a conflict between two occupations, one commercial and one religious. Nor need we con-

sider the further intimation that plaintiff was merely fired for insubordination.

AFFIRMED.