400 So.2d 1262 (1981)
Margaret KENNY, Appellant,
v.
AMBULATORY CENTRE OF MIAMI, FLORIDA, INC., et al., Appellees.
No. 80-1164.
District Court of Appeal of Florida, Third District.
June 23, 1981.
As Corrected on Denial of Rehearing July 28, 1981.
*1263 Robert M. Brake, Coral Gables, for appellant.
Roy B. Gonas, Coral Gables, for appellees.
Before HENDRY, SCHWARTZ and BASKIN, JJ.
BASKIN, Judge.
Margaret Kenny, a registered nurse, brought an action against her employer, Ambulatory Centre of Miami, Florida, Inc., and its parent corporation, Ambucare International, Inc., pursuant to section 458.22(5), Florida Statutes (1977),[1] in which she sought reinstatement to her position as full-time operating room nurse, reimbursement for lost wages, compensatory and punitive damages, court costs and attorney's fees. She alleged that she had been demoted to part-time on-call status[2] for refusing to assist with abortions and that her demotion violated her right to be free from religious discrimination. At trial, the court rejected her arguments. Ambulatory Centre maintained that fiscal necessity, combined with the refusal of other nurses to exchange their duties and assignments with those of appellant, justified its actions. The court agreed and entered final judgment in favor of appellees. We reverse the decision of the trial court upon our holding that section 458.22(5) precludes disciplinary action for refusal to participate in abortions. In addition, we hold that appellees failed to sustain their burden of proving they would incur undue hardship if they were to accommodate Nurse Kenny's religious beliefs.
Appellant Kenny commenced work as an operating room nurse for the Ambulatory Centre of Miami in 1976. When she later objected on religious grounds to assisting in performing abortions, another nurse exchanged duties with her for a period of time. Thereafter she was unable to find employees who were willing to cooperate.
Appellant was asked to resign when she continued to avoid participating in the performance of abortions, but she refused. When another nurse was told by the Centre that she would be fired if she failed to assist in performing abortions, appellant advised that nurse that section 458.22(5) provided a right to refuse. Subsequently appellant was removed from full-time status and placed on part-time on-call status, thereby becoming subject to loss of fringe benefits.
The record discloses that at the time of appellant's demotion appellees employed both full-time and regularly scheduled part-time nurses. The Centre performed procedures involving plastic surgery[3], gynecology, ophthamology, and podiatry. At trial appellees contended that Ambulatory Centre's audit showed net losses in 1977 and 1978 requiring it to reduce fixed costs.[4] Appellant countered that gross revenues increased with the increase in the number of patients and number of procedures. The trial court received evidence that gynecological procedures constituted approximately *1264 sixteen percent[5] of the total procedures performed at the Ambulatory Centre during the period in question. The court ruled that appellant's demotion was justified by appellees' "policy decision and fiscal management" for which there was a "justifiable and compelling basis" and that a "decision made in good faith based on fiscal necessity, although having a spin-off color of discrimination must prevail in an atmosphere of free enterprise and unfettered management process." The court deemed it unnecessary that appellant's religious beliefs be accommodated in the absence of sufficient cooperation from her fellow employees. Finding that appellees had established undue hardship incurred in reasonable efforts to accommodate appellant's beliefs, the court entered Final Judgment and Amended Final Judgment in favor of appellees.
The interpretation of section 458.22(5), Florida Statutes (1977) presents a case of first impression. Section 458.22(5) states:
RIGHT OF REFUSAL.  Nothing in this section shall require any hospital or any person to participate in the termination of a pregnancy, nor shall any hospital or any person be liable for such refusal. No person who is a member of, or associated with, the staff of a hospital nor any employee of a hospital or physician in which or by whom the termination of a pregnancy has been authorized or performed, who shall state an objection to such procedure on moral or religious grounds, shall be required to participate in the procedure which will result in the termination of pregnancy. The refusal of any such person or employee to participate shall not form the basis for any disciplinary or other recriminatory action against such person.
Appellant argues that her employer violated the provisions of section 458.22(5) by demoting her for exercising her religious beliefs. She claims her employer's actions stemmed not from financial demands but from a disciplinary motive. Her employer, she asserts, should have accommodated her unwillingness to participate. Appellees respond that the trial court's final judgment correctly observed that accommodation of appellant's religious beliefs constituted an undue hardship. In its ruling, the court cited Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977). We therefore compare the federal Civil Rights Act as construed in federal cases such as Trans World Airlines, Inc. v. Hardison, supra, with the Florida statute examined in these proceedings. Our purpose is to determine the appropriate standard of conduct for an employer whose employee chooses to exercise a right under section 458.22(5). We make clear at the outset that questions relating to the right to conduct abortions are not at issue here; only the right of an employee to refuse to assist in performing abortions under section 458.22(5) is before the court.

I. Federal Law.
The Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e-2, provides:
§ 2000e-2. Unlawful employment practices  Employer practices
(a) It shall be an unlawful employment practice for an employer 
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
*1265 In 1972, Congress amended Title VII to include the following definition of religion:
The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.
42 U.S.C. § 2000e(j).
That amendment ratified the provisions of the 1967 EEOC guidelines construing 42 U.S.C. § 2000e-2.
29 C.F.R. § 1605.1 (1967) provides in pertinent part:
(b) The Commission believes that the duty not to discriminate on religious grounds, required by section 703(a)(1) of the Civil Rights Act of 1964, includes an obligation on the part of an employer to make reasonable accommodations to the religious needs of employees and prospective employees where such accommodations can be made without undue hardship on the conduct of the employer's business. Such undue hardship, for example, may exist where the employee's needed work cannot be performed by another employee of substantial similar qualifications during the period of absence of the sabbath observer.
(c) Because of the particularly sensitive nature of discharging or refusing to hire an employee or applicant on account of his religious beliefs, the employer has the burden of proving that an undue hardship renders the required accommodations to the religious needs of the employee unreasonable.
In Trans World Airlines, Inc. v. Hardison, supra, the United States Supreme Court interpreted these EEOC guidelines. The court held that an employer must make reasonable efforts to accommodate an employee's religious practices unless those efforts resulted in undue hardship for the employer. An employer, however, is not required to deprive one employee in order to accommodate another, cf. Huston v. Local 93 International Union, 559 F.2d 477 (8th Cir.1977) (a union has no duty to vary the seniority provisions of the collective bargaining agreement in order to accommodate or prefer the religious needs of others), nor is the employer required to bear more than a minimal cost. The Trans World Airlines court reviewed the applicability of Title VII to the discharge of an employee whose religion required him to observe his Sabbath on Saturday. The employee held a position in which he had sufficient seniority to avoid working Saturdays; he then sought and received a transfer to a job in which he lacked sufficient seniority to retain his Saturday Sabbath. The union was unwilling to violate collective bargaining agreements governing seniority and the employer argued that had the employee been permitted to work fewer days, it would have been forced to pay substitute employees overtime wages. The Supreme Court ruled that reasonable efforts short of undue hardship to the employer were necessary to accommodate the employee's religious needs but decided that violation of the collective bargaining agreements and permitting fewer work days were not mandated.
The federal statute protects religious observances or practices. Trans World Airlines, Inc. v. Hardison, supra; McDaniel v. Essex International Inc., 571 F.2d 338 (6th Cir.1978). It places the burden on the employee to demonstrate that his religious practice was the reason for discipline. Once the employee has met his burden, the employer must demonstrate that accommodation would cause undue hardship.[6]Redmond v. GAF Corp., 574 F.2d 897 (7th Cir.1978); Draper v. United *1266 States Pipe and Foundry Co., 527 F.2d 515 (6th Cir.1976); Riley v. Bendix Corp., 464 F.2d 1113 (5th Cir.1972). The Draper court rejected the argument that forcing other workers to change shifts would cause a hardship on them stating:
[W]e are somewhat skeptical of hypothetical hardships that an employer thinks might be caused by an accommodation that has never been put into practice. The employer is on stronger ground when he has attempted various methods of accommodation and can point to hardships that actually resulted.
Draper at 520. Thus it is clear that federal law mandates reasonable accommodation to allow an employee to practice his religion.

II. Other States.
To assist us in deciding whether the federal test should be applied in Florida, we now examine decisions from other jurisdictions. In so doing, we observe that many states lack this type of civil rights statute. Of those states that do have similar statutes, some have incorporated the federal undue hardship-reasonable accommodation test and the large body of federal law interpreting the 1967 EEOC guidelines and the amendment to the Civil Rights Act. Kentucky Commission on Human Rights v. Commonwealth, Department for Human Resources, 564 S.W.2d 38 (Ky.App. 1978) illustrates the use of the federal test.
Other states have statutes similar to Florida's and prohibit employers from discriminating against employees who exercise religious beliefs. Many of these statutes do not include the federal test. Of these states, some have, nevertheless, judicially interpreted their statutes to require the weighing of reasonable accommodation efforts against undue hardship. See Wondzell v. Alaska Wood Products, Inc., 583 P.2d 860 (Alaska 1978), rev'd on other grounds on rehearing, 601 P.2d 584 (Alaska 1979); Rankins v. Commission on Professional Competence of Ducor, 24 Cal.3d 167, 593 P.2d 852, 154 Cal. Rptr. 907, appeal dismissed, 444 U.S. 986, 100 S.Ct. 515, 62 L.Ed.2d 416 (1979); Maine Human Rights Commission v. Local 1361, United Paperworks International Union, 383 A.2d 369 (Me. 1978); American Motors Corp. v. Department of Industry, 93 Wis.2d 14, 286 N.W.2d 847 (1979). Contra Corey v. Avco-Lycoming Division, Avco Corp., 163 Conn. 309, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S.Ct. 903, 34 L.Ed.2d 699 (1973); Olin Corp. v. Fair Employment Practice Commission, 34 Ill. App.3d 868, 341 N.E.2d 459 (1976), aff'd, 67 Ill.2d 466, 10 Ill.Dec. 501, 367 N.E.2d 1267 (1977); Michigan Department of Civil Rights v. General Motors Corp., 93 Mich. App. 366, 287 N.W.2d 240 (1979).
Our evaluation of the alternatives, that is, whether to apply the federal standard requiring reasonable accommodation unless undue hardship exists, or to apply the more stringent standard of disallowing discrimination regardless of the cost, impels us to accept the former. We therefore adopt the requirement that an employer must reasonably accommodate an employee's religious practices unless he establishes that he would suffer undue hardship.
Turning to the facts of the case before us, we find that although there is evidence of an accommodation attempt by the employer, the evidence does not establish that additional accommodation efforts would have caused undue hardship. Some efforts toward accommodation were made by fellow employees seeking to assist appellant. When other nurses ceased cooperating, however, the employer made no further effort to accommodate appellant. The record discloses that Nurse Kenny was able to assist in approximately eighty-four percent of the procedures performed at the Centre.[7] Gynecological procedures constituted approximately sixteen percent of the total procedures performed. There is no showing that schedules could not have been arranged to accommodate appellant's religious *1267 beliefs. Although appellees would incur some hardship, the record does not support a finding that undue hardship would result. A "reasonable accommodation is a question of fact, not law and where the lower court's finding of fact is clearly erroneous it must be rejected." Redmond v. GAF Corp., supra.
The legislature has seen fit to afford citizens a right to choose, that is, to refrain from assisting in performing abortions in accordance with the dictates of their religion. In so doing, the legislature has announced a policy permitting religious practices to supercede or take priority over certain employment practices. The law provides that an employee may not be fired or disciplined for exercising religious beliefs, and requires an employer to accommodate those beliefs unless the employer would suffer undue hardship. Each case must be examined on its particular facts to determine whether a good-faith effort to accommodate the employee's religious beliefs has been undertaken and to determine whether the employer is suffering undue hardship in his attempts to meet the required standard. Padon v. White, supra.
We therefore hold that appellees failed to sustain their burden of establishing undue hardship, and we reverse the trial court's decision. We remand the cause for the entry of an order reinstating appellant to her former position and for the determination of the amounts owed her in unpaid wages, damages and for other appropriate relief.
Reversed and remanded for further proceedings.
HENDRY, Judge, dissenting.
I respectfully dissent from the majority opinion because it appears to me from the opinion and record that this court is substituting its judgment for that of the trial court by re-evaluating the evidence. Where there is substantial competent evidence to support the trial judge's findings, as I believe there is here, an appellate court should not substitute its judgment for that of the trial court by re-evaluating the evidence. Delgado v. Strong, 360 So.2d 73 (Fla. 1978); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Westerman v. Shell's City, Inc., 265 So.2d 43 (Fla. 1972); Dory Auerbach Realty Co. v. Waser, 359 So.2d 902 (Fla. 3d DCA 1978).
The trial court's findings as set forth in the final judgment are:
"1. That this action filed by the Plaintiff is founded on employment discrimination from her employment as a nurse and her duties in termination of pregnancy procedures and other related birth control and sterilization operations contrary to her religious beliefs;
2. The Court further finds that Plaintiff was reduced to part-time status predicated on Defendant's policy decision and fiscal management;
3. The Court further finds that the Defendant's decision to reduce Plaintiff's employment is consistent with Defendant's fiscal position and that the record and evidence clearly establishes this predicate;
4. The Court further finds that it may appear at first blush that the Defendant has engaged in discriminatory practice; however, an analysis establishes that there is justifiable and compelling financial basis for Defendant's decision;
5. The Court further finds that a decision made in good faith based on fiscal necessity, although having a spin-off color of discrimination must prevail in an atmosphere of free enterprise and unfettered management process;
6. The Court further finds that the actions and conduct of the Defendant as demonstrated by the evidence and its efforts to accommodate the Plaintiff were reasonable under all the circumstances and does not transgress the purpose and intent of the existing laws and statutes;
7. The Court further finds that the limited staff and demand for services of the Plaintiff do not justify that her religious beliefs and moral principles be accommodated in view of the absence of sufficient cooperation and acceptance from her fellow employees;

*1268 8. The Court further finds that Plaintiff could not be forced into a position of compromising her beliefs in order to gain a livelihood in Defendant's employ; however, under this severe ordeal testing the very tentants [sic] of Plaintiff's faith, it would seem reasonable that Plaintiff would elect to seek employment in a receptive market;
9. The Court further finds that the lack of employee cooperation would have resulted in the employer paying additional wage salaries contrary to sound business and fiscal management;
10. The Court further finds that the employer under existing law is required to make a reasonable accommodation for the religious beliefs of employees. Trans World Airlines, Inc. v. Hardison [432 U.S. 63], 97 S.Ct. 2264 [53 L.Ed.2d 113];
11. The Court in the instant action finds that the Defendant has made out a case of undue hardship in an effort to accommodate the Plaintiff's religious beliefs and exerted reasonable efforts to accommodate the Plaintiff's beliefs;
12. In balancing the competing rights and interests, the Court is constrained to find for the Defendant."
I would affirm.
NOTES
[1] Renumbered 390.001(8), Florida Statutes (Supp. 1980).
[2] Under part-time on-call status, Nurse Kenny worked only when extra nurses were needed.
[3] Appellant did not participate in a number of plastic surgery procedures at the request of Dr. Snyder, a plastic surgeon, who preferred to work with his own team. The exhibits do not disclose the percentage of plastic surgery operations performed by Dr. Snyder.
[4] Appellees' audit, however, is of the parent cooperation, Ambucare, and not of the Ambulatory Centre.
[5] Defendant's Exhibit F, a chart exhibiting the surgical procedure activity for the months of January, 1977 to April, 1979, discloses that of 1,220 surgical procedures performed in 1978, 170 or 13.9% were gynecological procedures; of 614 surgical procedures between May and November of 1978, 96 or 15.6% were gynecological procedures. Appellant first refused to assist in abortions in May, 1978. Her demotion to part-time on-call status occurred in October of that year.
[6] The extent to which an employee tries to adjust may be considered. Howard v. Haverty Furniture Companies, 615 F.2d 203 (5th Cir.1980); Chrysler Corp. v. Mann, 561 F.2d 1282 (8th Cir.1977); Padon v. White, 465 F. Supp. 602 (S.D.Tex. 1979). Complaints from other employees do not constitute undue hardship unless morale problems become intolerable. Draper v. United States Pipe and Foundry Co., supra; Cummins v. Parker Seal Co., 516 F.2d 544 (6th Cir.1975), aff'd by an equally divided court, 429 U.S. 65, 97 S.Ct. 342, 50 L.Ed.2d 223 (1976).
[7] The evidence fails to establish that Nurse Kenny was precluded from assisting in all plastic surgery procedures.